THE MINISTERS, CHURCH WARDENS and VESTRYMEN of the PROTESTANT EPISCOPAL CHURCH of ST. MARY, in the city of Burlington *against* JOHN B. WALLACE and others.

In an action against the surviving heirs of an obligor upon a bond of their ancestor, the heirs of a deceased heir having lands by descent, should be joined in the action, and if they are not, the non-joinder may be pleaded in abatement.

---

*Wall* argued in support of the plea in abatement, and cited 2 *Saund.* 7, *note* 4; 2 *Chitty Plea.* 209.

*Kinsey* for the plaintiff cited, *Bac. abr. tit. Heir and Ancestor, G. H.;* 2 *Tidd's prac.* 354, 152; *Rev. Laws* 432; *Jac. Law dict. tit. Heir* 32; 6 *John. Rep.* 59.

EWING, C. J. Joshua M. Wallace bound himself and his heirs in a bond for the payment of a sum of money. He died, leaving lands which descended to his children as his heirs. Afterwards Joshua M. Wallace, Jun., one of these heirs died, leaving children to whom, as his heirs, descended the share he had taken by descent from his father. And at the commencement of this suit, the lands descended were held by the surviving heirs, and the heirs of the deceased heir as tenants in common. This action is brought against the surviving children of Joshua M. Wallace, the obligor.

And there is a plea in abatement for the non-joinder of the heirs of Joshua M. Wallace, the younger, to which plea, the plaintiffs have demurred.

These are the facts as presented by the pleadings; and the question is, whether the heirs of the deceased heir, having lands by descent, should have been joined in this action with the surviving heirs.

The heir of an obligor being named in the obligation, is bound for the payment of the debt, provided he have lands by descent from the obligor. We are told in the books that two things must combine in order to bind or charge the heir; being named in the obligation, and having lands by descent. Thus in *Boyer* v. *Rivet,* 3 *Bulstrode* 319, by *Whitlocke, J.,* "An action of debt brought against the heir stands on two reasons. 1. Upon the contract of the father, because the heir is bound with the father in the bond. 2. There are two things to bind the heir, his being bound with his father in the obligation, and the land which he hath in possession for to charge him." It is manifest, however, that the real ground of charge upon the heir, the true and efficient cause of his liability, is the descent to him of lands from the ancestor. Without such descent, although named and expressly bound in the obligation, he is subject to no responsibility. The debt is sometimes called the debt of the heir, and when sued the action is in the *debet* and *detinet;* but it becomes his debt in truth by reason of the lands descended. By the taking of the lands he charges himself. Thus in *Smith* v. *Parker,* 2 *Wm. Black. Rep.* 1232, *Chief Justice De Grey,* says : "The heir of the obligor is debtor to the obligee but only liable to pay the debt in respect of the assets which descended to him." And in *Plowden* 440, "When the heir denies. assets and it is found against him, or when he does not deny assets but pleads other matter which implies that he has assets, the debt of his ancestor has become his own debt in respect of the assets which he has in his own right, and so the property of the land which

he has in his own right makes the debt to be his own proper debt, for which reason the writ shall be in the *debet* and *detinet.*"

It is thus seen that the descent of lands upon the heir creates his liability; and if he have the lands at the time he is sued, he may, by a proper course of pleading, subject them only, and not himself or his other estate, to the payment of the debt. If he admit the debt and confess and specify the lands descended, the judgment must be special to be levied of those lands. *Plowd.* 440.

If the lands have passed through more than one descent, the heir of the heir is liable upon the bond of the ancestor, from whom the lands originally descended; and upon the same ground, because of the lands descended. *Dyer* 368, *a.* The liability continues, says one of the books, to many generations.

In the present case then, the heirs of the ancestor are bound by reason of the lands descended to them; and the heirs of the deceased heir, for the same cause, the lands descended to them, are likewise bound.

But to enforce this obligation, is one action to be brought against all? Are all to be joined in one suit?

Inasmuch as they are answerable by reason of the lands descended; and as by due pleading they may subject the lands and the lands only to the discharge of the debt, there seems an obvious propriety in uniting all in one common suit; as, if part only are sued, the creditor may obtain judgment against part only of the lands, and may be compelled to resort for the residue of the lands, to an action against the other heirs? Moreover if the heirs have parted with the land they will by apt pleading on their part be charged with the value only. The surviving heirs in the present case then would not be chargeable, unless by false pleading, with the whole debt, if it exceeded the value of the lands descended; nor even with the value of the whole lands descended, but with the value only of the portion

which descended to them. And in such event for the residue, the obligee, if the surviving heirs only are sued, must resort to the other heirs.

This case bears no analogy to that of the surviving obligors of a bond, against whom the whole cause of action survives, and who are liable for the whole demand and can by no possible course of pleading subject themselves to part only.

The principles which are to be found in the books, satisfactorily evince the necessity of uniting all these heirs in one suit.

If a man be seized of lands in gavelkind, and hath issue three sons, and by obligation binds himself and his heirs and dies, an action of debt shall be maintainable against all the three sons, for the heir is not chargeable unless he hath lands by descent; *Co. Lit.* 376, *b.* If one binds himself and his heirs and leave lands at common law and lands in gavelkind, the obligee must sue all the heirs; *Hob.* 25. When coparceners are in by one descent, if the one has issue and dies and these issue enter, yet they shall be in as parceners, and therefore he who brings *precipe quod reddat* shall have it against them by one joint *precipe ;* 4 *Viner tit. Action, Joinder D. d.* 4, in *marg.* Parceners should, before partition, be jointly sued though they be entitled to the estate by different descents; 1 *Chit. plead.* 29. If there are several heirs to the property chargeable, one not being liable more than another all must be sued jointly; *Com. dig. tit. abatement F.* 9. In *Boyer* v. *Rivet,* 3 *Bulstr.* 320, *Jones, Justice* said, " If one doth bind him and his heir in a warranty, covenant, debt, or annuity, the heir shall be subject for the land; all the heirs to be equally charged; and if one heir be sued severally by himself, he shall have contribution against the others." In the note of *Sergeant Williams* to 2 *Saund.* 7, he says, " If there be several heirs, such as parceners, heirs in gavelkind, or borough English, and one only be charged, he is entitled to contribution from

the others, and, therefore, may plead " that the others are not joined. It is true, the learned annotator is speaking of a *scire facias* against the heir; and in some respects there is a difference between a *scire facias* on a judgment or recognizance, and an action of debt on a bond, as respects the heir; but not in this particular, where he is entitled to contribution, or in other words, that other persons should share the charge with him; and this duty of contribution gives, according to the annotator, the right to the plea.

The case of *Hawtrie* v. *Auger and others*, 2 *Dyer*, 239, is in point. It was thus: Sir Anthony Auger being seized in fee of divers lands in gavelkind, bound himself and his heirs, in a bond, and had issue three sons, and died seized, and they entered, and the eldest had issue a daughter and died. And debt in the *debet* and *detinet* was brought against the two sons and the daughter of the deceased son, as heirs. The same case is reported in *Moore* 74, *pl.* 203, where the reporter seems to have had some doubt whether the daughter was liable; for he subjoins a *quere*, whether, she being heir of an heir, should be chargeable with the obligation; but he had no doubt, or at least he has expressed none, whether, if chargeable, she was rightly joined in the action. The case is also reported in *Bendloe* 146, where the declaration is given.

It was insisted in argument, on the part of the plaintiff, that if the heirs of the heir are included, difficulties will arise in the apportionment of the recovery, and the form of the judgment. But it is obvious, that no more serious difficulties can occur than may arise in every case where several heirs are defendants. One may confess the action, and show the certainty of the assets; another may plead alienation in good faith before action brought; and another *riens per descent*, or some other plea which he knows to be false. In all these cases the form of the recovery will differ. In *Cary* v. *Pooly*, 2 *Keble* 388, *pl.* 3, an action of debt was brought against four co-heirs, and on several issues on *riens*

*per descent,* assets were found as to one, and as to the rest that they had nothing, having aliened before the writ; whereon judgment was given against her that had assets *quod recuperet debitum et damna,* generally *de bonis propriis,* and on error in K. B. that judgment of C. B. was affirmed.

I am of opinion the heirs of the deceased heir, in the present case, may be, and ought to be, joined in the same suit with the surviving heirs; that the plea in abatement is, therefore, sustained; and judgment should be rendered for the defendant.

FORD, J. Joshua M. Wallace and his son Joshua M. Wallace, Jun., made an obligation to Rebecca Cox, in $2000; for the payment whereof they bound themselves and their heirs, *jointly and severally.* The plaintiffs having obtained an assignment of this obligation, and Joshua M. Wallace, Jun., having departed this life since his father, the plaintiffs brought their action against the *surviving heirs of Joshua M. Wallace,* without taking notice of the heirs of Joshua M. Wallace, *Jun.,* deceased. Wherefore, Eliza B. Wallace pleads that the estate whereof Joshua M. Wallace, the elder, died seized, descended at his death, to these defendants and Joshua M. Wallace, *Jun.,* as tenants in common; that the latter died, leaving four children, whose father's share had descended to them, and that they hold the same as tenants in common with the defendants; and because the said children are not summoned, she prays that the writ may be quashed. To this there is a demurrer and joinder.

The question is, whether the heirs of a *deceased heir* ought to be included with the surviving heirs in one action. It is admitted that the heirs of a deceased heir are *liable to contribution* in respect of the lands descended to them from the obligor; and it follows as a necessary consequence, that they must be liable to a suit in some form; otherwise, if all the heirs happened to be dead *except one,* and his seventh

was adequate to pay only half the debt, the creditor would have to lose the residue, not because there was not an abundance of assets, but because they were not accessible. As, therefore, the heir of a deceased heir must be liable to an action in some form, they will be plainly benefitted by being included with the survivors in the same writ, as it will be the easiest way in which they can make contribution, and will relieve them from all but their proportion of the costs; it will also average the debt on all the lands descended, instead of its being concentrated on a part; and it will likewise benefit the creditor by subjecting all the lands at once to the payment of his debt, instead of only a part of them. And I take the law to be as plain in principle, as the reason of the thing.

There is a lien by recognizance, which binds all lands of the conusor, in the hands of his heirs and alienees, to contribution; and there is a lien by the debt of an ancestor which binds all the lands of such ancestor, in the hands of his heirs and devisees, to contribution; and the analogy between these liens proves the propriety of including in one action all those who are bound to contribute to them. In the case of *Jefferson* v. *Morton*, 2 *Saunders* 6, there is a record of proceedings on a recognizance, very much in point. A *scire facias* being sued out against the *heir* and five *vendees* of a conusor, and the sheriff having returned that there was *no heir* in his bailiwick, and that he had summoned the others; those five ter tenants appeared and pleaded that they were not bound to answer, because there was another ter tenant of the name of Jackson *not named in the writ;* whereupon the conusee prayed for a like *scire facias* against the said Jackson, and it was granted. *Sergeant Williams*, in note 10, makes the following remark : " the reason of this plea seems to be, because every tenant of the land is *entitled to have contribution*, that is, all the lands of the conusor in the hands of the several purchasers, must be extended and equally charged, and unless all the tenants

be warned, the others are not obliged to answer." So it is, if two persons maks a *joint* warranty, whereby the charge on them is equal, and one of them dies, the survivor and the heir of the deceased party ought to be *vouched together.* *Herbert's case,* 3 *Coke,* 14. *a.* Now the right of contribution belongs to the heirs of a deceased heir as much as to the heirs that are not deceased ; and, therefore, they may be *sued together* with as much congruity as a living warrantor, and the heir of a deceased warrantor may be *vouched together* for contribution. When *Sergeant Williams* says, that every tenant of the land is entitled to have contribution he must be understood according to *Lord Coke's* definition of contribution in 3 *Rep.* 14, *b.* " Note, reader, when it is said before and after in our books, that if one purchaser be only extended for the whole debt, that he shall have contribution; it is not thereby intended that the others shall give or allow unto him any thing by way of consideration, but ought to be intended that the party who only is extended for the whole, may have *audita querela or scire facias* as the case requireth, to *defeat the execution* and *drive* the conusee to sue execution of the *whole land,* so in this manner *every one* shall be contributory, that is, the land of *every* ter tenant shall be equally extended." Now, the form given for an execution, in *Rev. Laws* 432, *sec.* 6, instead of repelling a contribution by all the heirs, as here required, goes directly to confirm it, by requiring a levy to be made *on the lands of the ancestor* in the hands of his heirs, whereby it means all his lands, and not some of it only ; and all his heirs, not some of them only. It is objected that the heirs of the deceased heir are not heirs in this case of their grandfather. This is truly so; nor are they to be called *his* heirs in pleading. In 2 *Saunders,* 7, *note* 4, it is observed, that if a declaration be against the defendant as heir of the obligor, and it appear that he is only the *heir of an heir,* that the variance will be fatal ; and therefore, he says, where lands have descended from the obligor to another

who has died seized, and from him to the defendant, the descent must be stated specially, as that the defendant is the heir of A. who was the heir of the obligor; thus shewing, that lands descending to the heir of an heir, are liable to contribution, and prescribing the mode of declaring in such a case. Now the plaintiffs may declare against the surviving heirs, and the heirs of a deceased heir, in the mode here mentioned, without the least incongruity, seeing that the *latter* are as much liable, *in respect of the lands of the obligor in their hands*, as the former. None of them are liable as *makers of the bond;* and the only reason why they are liable in the *debet* is, that they take the assets in their own right, and not in *autre droit*, like executors or administrators. Therefore, it is said, in *Bac. Ab. title Heir, letter G.*, that they are to be sued *as if* it was their own debt; not that it *is* their debt or contract, or that they are at all liable otherwise, than in respect of the lands descended to them from the ancestor. It is, therefore, no personal contract, nor any thing more than a *lien* on lands descended to them from an ancestor for his debt.

The idea that a *lien* survives against survivors, is altogether fallacious. In 3 *Rep.* 14, *a. Herbert's case*, it is said, that a joint lien which bindeth the land shall not survive, or lie only on the survivor; as on a joint warranty the survivor shall not be only vouched. The doctrine of survivorship is applicable to *persons* and *contracts*, but not to liens on land. It cannot survive against survivors, and render them liable for the whole charge; but it rests on *all the lands descended* so long as they remain in the hands of any person by descent. Whether the right and title to contribution shall be lost in respect of lands alienated by an heir, or whether the others may compel the creditor to bring him into the suit, in order to subject him to contribution according to the value, for the relief of the other heirs, is not a point at present before the court, and I purposely avoid giving any opinion upon it.

In 2 *Co.* 25, *b.* it is said, if a man bind himself and his heirs in an obligation, and have heirs and lands on the part

of his father and on the part of his mother, both heirs shall be equally charged; and it is added in another book, that the plaintiff shall have *several actions,* but that execution shall *stay* till it may be had against both of them. The reason is not mentioned for *separate* actions in that particular case, nor is it very apparent, inasmuch as each set of heirs is entitled to *contribution* from the other; and after all, the affinity between these separate actions makes them so nearly in the nature of one, that execution against one shall *stay* till it can be had against both. But the general rule I conceive to be otherwise. It is said, *in note* 10, *to* 2 *Saund.* 7, "that if there be *several heirs,* such as co-parceners, heirs in gavelkind, or borough English, and one only be charged, he is entitled to contribution from the other heirs, and therefore, may plead this plea," to wit, in abatement; plainly implying, that all who are liable to contribution must be joined in the same proceeding, the *gravamen* of the plea being that some are omitted.

DRAKE, J. concurred.